Jonathan F. Putnam (JP 3883)
John P. Del Monaco (JD 8141)

KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALYCE SERRANO and ANDREA LONDONO, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>- against -<br><br>CABLEVISION SYSTEMS CORP. and CSC HOLDINGS, INC.,<br><br>      Defendants. | Case No.: 09 CV 1056 (DLI)<br><br>ECF Case<br><br>**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS** |

In support of their Motion for Summary Judgment and pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, Defendants Cablevision Systems Corp. and CSC Holdings, LLC respectfully submit this Statement of Undisputed Facts ("SUF"), setting forth the dispositive facts for which there are no genuine issues to be tried:

1. On August 30, 2006, Plaintiff Alyce Serrano ("Serrano") subscribed to Cablevision's Optimum Online Internet Service. (Affidavit of Rocky Boler in Support of Defendants' Motion for Summary Judgment (hereinafter "Boler Aff."), ¶ 2.)

2. Serrano self-installed the Cablevision software that allowed her computer to access Cablevision's Internet network. (Boler Aff., ¶ 7.)

3. Cablevision customers who self-install are provided during the set up process with an electronic copy of Cablevision's Terms of Service ("Terms of Service") and must

indicate that they have reviewed and agree to the Terms of Service by clicking on a link marked "Agree." (Boler Aff., ¶ 7, Ex. D; Affidavit of Steve Hoffman in Support of Defendants' Motion for Summary Judgment (hereinafter "Hoffman Aff."), ¶ 14, Ex. M.)

4. On February 3, 2008 and March 2, 2008, Serrano executed work orders with Cablevision. (Boler Aff., ¶¶ 4, 5, Exs. A and B.)

5. Serano's work orders provide in the signature block: "By signing below, Customer acknowledges that all information on both sides of this Work Order … has been read and agreed to." (Boler Aff., ¶¶ 4, 5, Exs. A and B.)

6. The work orders signed by Serrano on February 3, 2008 and March 2, 2008 also state: "In addition to the Terms and Conditions set forth herein, please review the appropriate Terms of Service available for each of the specific Optimum services subscribed to, which are incorporated herein by reference. Please see … www.optimumonline.com for Optimum Online…" (Boler Aff., ¶¶ 4, 5, Exs. A and B.)

7. On January 13, 2006, Plaintiff Andrea Londono ("Londono") subscribed to Cablevision's Optimum Online Internet Service. Londono's Cablevision Internet service was briefly cancelled in October 2008, but was restarted in September 2009. (Boler Aff., ¶ 3.)

8. On January 13, 2006, Londono signed a work order associated with the installation of her Cablevision Internet service. (Boler Aff., ¶ 6, Ex. C.)

9. Londono's work order provides in the signature block: "By signing below, Customer acknowledges that all information on both sides of this Work Order … has been read and agreed to." (Boler Aff., ¶ 6, Ex. C.)

10. Londono's work order also states: "In addition to the Terms and Conditions set forth herein, please review the appropriate Terms of Service available for each of the specific

optimum services subscribed to, which are incorporated herein by reference. Please see … www.optimumonline.com for Optimum Online …" (Boler Aff., ¶ 6, Ex. C.)

11. The Terms of Service in effect when Serrano and Londono subscribed to Cablevision's Optimum Online Internet Service state: "CSC Holdings, Inc. ('Cablevision') is pleased to provide its Optimum Online high-speed Internet access (the "Optimum Online Service[s]") to you in accordance with these terms and conditions, which terms and conditions incorporate and include the Cablevision Internet Product Acceptable Use Policy … as [they] may be changed from time to time."  They also provide: "Subscriber's use of the Optimum Online Service(s) shall be deemed acknowledgement that Subscriber has read and agreed to these terms of service.  This is a legal document." (Hoffman Aff., ¶ 2, Ex. A at p. 1; ¶ 14, Ex. M at p. 1.)

12. The Terms of Service in effect when Serrano and Londono subscribed to Cablevision's Optimum Online Internet Service include a provision titled, "Bandwidth, Data Storage and Other Limitations," which states: "Subscriber agrees to comply with Cablevision's bandwidth, data storage and other limitations of Optimum Online Service as established and modified by Cablevision from time to time.  Subscriber agrees that its activity will not improperly restrict, inhibit or degrade any other Subscriber's use of Optimum Online Service, nor represent (in the sole judgment of Cablevision) an unusually large burden on the network itself.  In addition, Subscriber agrees that its activity will not improperly restrict, inhibit, disrupt, degrade or impede Cablevision's ability to deliver and monitor Optimum Online Service, backbone, network nodes, and/or other network services." (Hoffman Aff., ¶ 2, Ex. A at ¶ 32; ¶ 14, Ex. M at ¶ 32.)

13. The Terms of Service in effect when Serrano and Londono subscribed to Cablevision's Optimum Online Internet Service also provide that: "Cablevision reserves the right to protect the integrity of its network and resources by any means it deems appropriate. This includes but is not limited to: port blocking, e-mail virus scanning, denying e-mail from certain domains, and putting limits on bandwidth and e-mail." (Hoffman Aff., ¶ 2, Ex. A at ¶ 26; ¶ 14, Ex. M at p. ¶ 26.)

14. The Terms of Service effective on or about June 19, 2006, prior to when Londono first subscribed to Cablevision's Optimum Online Internet Service and shortly after Serrano first subscribed, also provide that "[a]ccess to the network cannot be guaranteed, and you may be unable to access the network at any time, and disconnections from the network may occur from time to time…. In no event shall Cablevision have any liability arising from the reliability, ability or inability to connect to the Internet … ." (Hoffman Aff., ¶ 3, Ex. B at ¶ 19(c); ¶ 14, Ex. M at ¶ 19(c).)

15. Cablevision's Terms of Service expressly incorporate the Acceptable Use Policy: "CSC Holdings, Inc. ('Cablevision') is pleased to provide its Optimum Online high-speed Internet access … to you in accordance with these terms and conditions, which terms and conditions incorporate and include the Cablevision Internet Product Acceptable Use Policy…." (Hoffman Aff., ¶ 2, Ex. A at p. 1; ¶ 14, Ex. M at p. 1.)

16. The Acceptable Use Policy in effect when Serrano and Londono subscribed to Cablevision's Optimum Online Internet Service states: "Violations of system or network security are prohibited and may result in criminal and civil liability. Examples of system or network security violations include, without limitation, the following: …. Excessive use of bandwidth, that in Cablevision's sole opinion, goes above normal usage or goes

beyond the limit allocated to the user." (Hoffman Aff., ¶ 11, Ex. J at pp. 1-2; ¶ 14, Ex. M at pp. 23-24.) The Acceptable Use Policy further provides: "Cablevision reserves the right to modify the AUP at any time and any such modifications shall be automatically effective to all users when adopted by Cablevision." (Hoffman Aff., Ex. J at p. 1; Ex. M at p. 23.)

17. The Acceptable Use Policy in effect when Serrano and Londono subscribed to Cablevision's Optimum Online Internet Service also states: "Enforcement. Cablevision reserves the right to investigate violations of this Policy, including the gathering of information from the user or users involved and the complaining party, if any, and the examination of material on Cablevision's servers and network. Cablevision prefers to advise customers of AUP violations and any necessary corrective action but, if Cablevision, in its sole discretion, determines that a user has violated the AUP, Cablevision will take any responsive action that is deemed appropriate without prior notification. Such action includes but is not limited to temporary suspension of service, reduction of service resources, and termination of service. Cablevision is not liable for any such responsive action and these actions are not exclusive. Cablevision may take any other legal or technical action it deems appropriate." (Hoffman Aff., ¶ 11, Ex. J at pp. 3-4; ¶ 14, Ex. M at pp. 26-27.)

18. The Cablevision Acceptable Use Policy was updated on or about March 12, 2007. (Hoffman Aff., ¶ 12, Ex. K.) The March 12, 2007 version of the Acceptable Use Policy states that Cablevision has the right to "to impose limits on excessive bandwidth consumption via any means available to Cablevision." (Hoffman Aff., ¶ 12, Ex. K at p. 1.)

19. Since at least on or about March 23, 2009, the Acceptable Use Policy has also provided: "Cablevision reserves the right to use a changing variety of reasonable network management techniques including but not limited to (i) allocating a fixed maximum amount of bandwidth to non-subscribers seeking to upload peer-to-peer files from Subscribers; (ii) utilizing STM technology to prioritize traffic during times of peak congestion; and (iii) implementing filtering and spam detection techniques to manage reliable email sources and mitigate spam. In limited instances, these techniques may affect the throughput rate at which Subscribers may send and receive data, nonsubscribers' ability to establish session connections within the network (such as peer-to-peer sessions), or result in the delay of certain traffic during times of peak congestion." (Hoffman Aff., ¶ 13, Ex. L at p. 2.)

Dated: September 7, 2010

Respectfully submitted,

 s/ Jonathan F. Putnam
Jonathan F. Putnam (JP 3883)
John P. Del Monaco (JD 8141)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Attorneys for Defendants
Cablevision Systems Corp. and CSC Holdings, LLC