UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
ALYCE SERRANO and ANDREA               :
LONDONO, on behalf of themselves and all :
others similarly situated,                     :
                                               :
                                               :   **MEMORANDUM AND ORDER**
                     Plaintiffs,       :   09-CV-1056 (DLI) (MDG)
                                               :
         -against-                             :
                                               :
CABLEVISION SYSTEMS CORP. AND CSC :
HOLDINGS, INC.,                                :
                                               :
                     Defendants.       :
------------------------------------------------------------ X
**DORA L. IRIZARRY, United States District Judge:**

Alyce Serrano ("Serrano") and Andrea Londono ("Londono") (collectively, "Plaintiffs") bring this class action pursuant to 18 U.S.C. § 1030, asserting claims for violations of the Consumer Fraud and Abuse Act (the "CFAA") against Cablevision Systems Corp. and CSC Holdings, LLC[1] (collectively, "Cablevision" or "Defendants"). Plaintiffs allege that Defendants wrongfully limited Plaintiffs' use of certain peer-to-peer ("P2P") applications without authorization, and thereby caused damage to Plaintiffs' computers. Plaintiffs also assert various state law claims stemming from misrepresentations allegedly made by Defendants concerning the quality and speed of its internet service. The class action seeks: (i) compensation for the damage caused by Defendants' wrongful acts; and (ii) declaratory and injunctive relief to end Defendants' improper practices.

Defendants move for summary judgment on all of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 56, or, in the alternative, judgment on the pleadings as to Counts I-VI, pursuant to Rule 12(c). Plaintiffs move, pursuant to Rule 56(e), to strike the affidavits submitted

---

[1] On November 10, 2009, CSC Holdings, Inc. converted to an LLC. (Def. Mem. in Supp. Mot. for SJ at 1.)

1

by Defendants in support of their motion for summary judgment. For the reasons set forth below, Plaintiffs' motion is denied, and Defendants' motion is granted.

## BACKGROUND

Cablevision is a telecommunications, media and entertainment company whose Internet services are branded Optimum Online ® high-speed internet ("Optimum Online"). (Compl. ¶¶ 2, 9, 15; Def. Answer ¶¶ 2, 10.) Plaintiffs are individuals who subscribed to Cablevision's Optimum Online service.

### I.     Plaintiffs' Subscriptions to Optimum Online Internet Service

Serrano first subscribed to Optimum Online on August 30, 2006, by self-installing the Cablevision software that allowed her computer to access Cablevision's internet network. (Def. 56.1 Stmt. ¶ 1-2; Pl. 56.1 Stmt. ¶ 1-2.) As part of the self-install process, Cablevision customers are provided with an electronic copy of Cablevision's Terms of Service and they must indicate that they have reviewed and agree to the Terms of Service by clicking on a link marked "Agree." (Def. 56.1 Stmt. ¶ 3; Pl. 56.1 Stmt. ¶ 3.) The Terms of Service also incorporate by reference the Acceptable Use Policy ("AUP"). (Def. 56.1 Stmt. ¶ 15.)

On February 3 and March 2, 2008, Serrano executed work orders relating to her internet service. (Def. 56.1 Stmt. ¶ 4; Pl. 56.1 Stmt. Serrano/Londono ¶ 4.) The work orders provided, in the signature block: "By signing below, Customer acknowledges that all information on both sides of this Work Order has been read and agreed to." (Def. 56.1 Stmt. ¶ 5.) The work orders specified: "In addition to the Terms and Conditions set forth herein, please review the appropriate Terms of Service available for each of the specific Optimum services subscribed to, which are incorporated herein by reference . . . ." (Def. 56.1 Stmt. ¶ 6; Pl. 56.1 Stmt. ¶ 6.)

Londono first subscribed to Cablevision's Optimum Online Internet Service on January 13, 2006,[2] and signed a work order that, like the work order signed by Serrano, provided in its signature block: "By signing below, Customer acknowledges that all information on both sides of this Work Order has been read and agreed to." (Def. 56.1 Stmt. ¶ 7, 8, 9; Pl. 56.1 Stmt. ¶ 7, 8, 9.) The work order contained the same language as Serrano's providing that the Terms of Service were incorporated by reference. (Def. 56.1 Stmt. ¶ 10, Pl. Stmt. ¶ 10.)

The Terms of Service in effect when Plaintiffs subscribed to Optimum Online state that: "Subscriber's use of the Optimum Online Service(s) shall be deemed acknowledgement that Subscriber has read and agreed to these terms of service." (Def. 56.1 Stmt. ¶ 11.) In the provision entitled, "Bandwidth, Data Storage and Other Limitations," the Terms of Service state: "Cablevision reserves the right to protect the integrity of its network and resources by any means it deems appropriate. This includes, but is not limited to: port blocking, e-mail virus scanning, denying e-mail from certain domains, and putting limits on bandwidth and e-mail." (Def. 56.1 Stmt. ¶ 13.)

The AUP states that "[e]xcessive use of bandwidth, that in Cablevision's sole opinion, goes above normal usage or goes beyond the limit allocated to the user" is a "network security violation." (Def. 56.1 Stmt. ¶ 16.) The AUP grants Cablevision the right "in its sole discretion," to take actions "without prior notification" to protect its network from such harms as "excessive use of bandwidth," including by "temporary suspension of service, reduction of service resources, and termination of service," and further provides that "Cablevision is not liable for any such responsive actions."[3] (Def. 56.1 Stmt. ¶ 16, 17.)

---

[2] Londono's service was cancelled in October 2008, but was resumed in September 2009.
[3] Defendants note that the Terms of Service and AUP quoted in the text are those in effect at the time that Plaintiffs first subscribed to Optimum Online (Def. 56.1 Stmt. ¶ 12, 13, 16, 17),

3

**II.     Plaintiffs' Allegations**

The Complaint alleges that Cablevision promised its subscribers "Optimum Online" service and a "Faster Internet," and advertised, marketed and sold its High Speed Internet Service based on claims of "blazing fast speed," and that "Optimum Online's lightning-fast Internet access takes the waiting out of the Web." (Compl. ¶ 17.) The Complaint further alleges that Defendants claim premium service "up to 5x faster than phone company High Speed Internet." The Plaintiffs contend that these representations allow Defendants to charge a premium of "up to more than 100%" of the fees charged by its competitors. (Compl. ¶ 18.)

Plaintiffs allege that Defendants severely limited the speed of and/or altogether stopped certain P2P file sharing internet applications by engaging in a network management practice called "throttling," which interferes with subscribers' ability to share online content via P2P transmissions by disrupting the Transmission Communication Protocol ("TCP") on subscribers' computers. (Compl. ¶¶ 3, 22.) Specific forms of throttling alleged include: forging TCP packets of a certain type, known as "reset" or "RST" packets; deliberately dropping (failing to deliver) a larger proportion of P2P packets than non-P2P packets, thereby causing the communications to slow; or blocking a proportion of a P2P program's attempts to establish connections by never transmitting them in the first place. (Compl. ¶¶ 22, 23.) Plaintiffs allege that the forged reset packets Defendants sent plaintiffs damaged plaintiffs' computers by compromising the internal software and impairing their ability to receive and transmit data. (Compl. ¶ 24.)

Plaintiffs allege that they have been damaged and incurred losses as a result of Defendants' conduct, citing Plaintiffs' inability to receive and make Skype calls as an example.

---

and that Cablevision has updated its Terms of Service and AUP on a number of occasions since 2006. (Def. 56.1 Stmt. ¶¶ 14, 18, 19.)

(Compl. ¶¶ 28, 29.) Plaintiffs allege that they suffered a loss as a result of Defendants' throttling, because they "wasted time and effort in determining what was causing the slow connection, either by rebooting their computers, or by making repeated but unsuccessful attempts to reconnect to various persons using the Skype application." (Compl. ¶ 30.) Finally, Plaintiffs resorted to land line and cell phones to call persons they could not reach on Skype, thereby incurring costs for telephone service that would not have been incurred if Defendants had not interrupted their Skype service. (*Id.*)

## PLAINTIFFS' MOTION TO STRIKE

Rule 56(e) states that: "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(e). The Second Circuit has explained that a court may "strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay, or make generalized and conclusory statements." *Hollander v. American Cyanamid Co.*, 172 F. 3d 192, 198 (2d Cir.1999) (abrogated on other grounds by *Schnabel v. Abramson*, 232 F. 3d 83 (2d Cir. 2000)). "Alternatively, a court may, in considering a motion for summary judgment, simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible." *Doe v. National Board of Podiatric Medical Examiners*, 2004 WL 912599, at * 4 (S.D.N.Y. Apr. 29, 2004) (citing *United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.*, 44 F. 3d 1082, 1084 (2d Cir. 1995).

The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge. *Searles v. First Fortis Life Ins. Co.*, 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000); *accord Peters v. Molloy College of Rockville Centre*, 2010 WL 3170528, at *2 (E.D.N.Y.

Aug. 10, 2010). "The lack of certain specific details or arguably vague statements will not render the affidavit inadmissible, but affect the weight and credibility of the testimony, which have to be determined by the trier of fact at trial." *Zakre v. Norddeutsche Landesbank Girozentrale,* 396 F. Supp. 2d 483, 504 (S.D.N.Y. 2005).

In the instant action, Defendants rely upon the affidavits of Rocky Boler, Senior Vice President, Customer Service, for Cablevision ("Boler Aff."), Doc. Entry No. 37, and Steve Hoffman, Vice President, Internet Design & Development, for Cablevision ("Hoffman Aff."), Doc. Entry No. 38, and attached exhibits, including Cablevision's work orders (Boler Aff. Exs. A-C), and Terms of Service (Hoffman Aff. Ex. M), in support of their motion for summary judgment.

Plaintiffs argue that the supporting affidavits include statements not based on personal knowledge and facts that would not be admissible at trial. (Pl. Mem. in Supp. at 2.) Regarding the Boler Affidavit, Plaintiffs move to strike paragraphs 2-7, because these paragraphs assert factual information not based on Mr. Boler's personal knowledge. Regarding the Hoffman Affidavit, Plaintiffs move to strike paragraphs 2-14, because these paragraphs assert factual information not based on Mr. Hoffman's personal knowledge. Plaintiffs further argue, citing Local Civil Rule 56.1(d), that paragraphs 11-19 of Defendants' Statement of Undisputed Facts should be stricken because Defendants failed to cite to admissible evidence in support of those assertions.

Nothing in the Federal Rules or case law requires a court to conduct a line-by-line review of a challenged affidavit. "Rather than scrutinizing each line . . . the Court, in its analysis of the motion for summary judgment, will only consider relevant evidence that is admissible." *Morris v. Northrup Grumman Corp*., 37 F. Supp. 2d 556, 569 (E.D.N.Y. 1999); *accord  Flaherty v.*

6

*Filardi*, 2007 WL 163112, at *4 (S.D.N.Y. Jan. 24, 2007). In evaluating the motion for summary judgment, the Court will consider only those facts that are admissible evidence. However, the Court notes that, as to Boler's Affidavit, paragraphs 2-7 are based on business records maintained by Cablevision and reviewed by Boler himself. Notably, they contain information not contested by Plaintiffs. The same is true as to the Hoffman Affidavit. The remaining objections to Defendants' Rule 56.1(d) Statement are without merit. Thus, Plaintiffs' motion to strike is denied.

## DEFENDANTS'S MOTION FOR SUMMARY JUDGMENT

**I.     Legal Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*.

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.,* 156 F. 3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial," FED. R. CIV. P. 56(e). "When no rational jury could find in favor of the nonmoving party because the evidence to

support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship.*, 22 F. 3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F. 2d 1108, 1114 (2d Cir. 1988)).

## II.   Discussion

Defendants argue that they are entitled to summary judgment because Plaintiffs entered into a contract with Defendants and the contract expressly authorized Cablevision to engage in the alleged conduct giving rise to Plaintiffs' claims. (Def. Mem. in Supp. at 7-8). Plaintiffs counter by arguing that they did not enter into a contract with Defendants, and even if they did, the purported contracts at issue were vague and ambiguous. (Pl. Mem. at 1.)

### A.   Contract Formation

Serrano admitted that, upon initiation of her service, she was "provided with an electronic copy of Cablevision's Terms of Service" and was required "to indicate that [she] reviewed and agreed to the Terms of Service by clicking on a link marked 'Agree.'" (Serrano Aff. at ¶3). In the context of agreements made over the internet, such "click-wrap" contracts are enforced under New York law as long as the consumer is given a sufficient opportunity to read the end-user license agreement, and assents thereto after being provided with an unambiguous method of accepting or declining the offer. *See Hines v. Overstock.com*, 380 Fed. App'x 22, 25 (2d Cir. 2010) (citing *Moore v. Microsoft Corp.*, 293 A.D.2d 587, 588 (2d Dept. 2002) (contract formed when "[t]he terms of the [agreement] were prominently displayed on the program user's computer screen before the software could be installed," and "the program's user was required to indicate assent to the [agreement] by clicking on the 'I agree' icon before proceeding with the download"); *accord Bar-Ayal v. Time Warner Cable Inc.*, 2006 WL 2990032, at *9-11 (S.D.N.Y. Oct.16, 2006). Thus, Serrano entered into a contract with Cablevision by nature of

her clicking of the link marked "Agree."

Londono admitted that she "signed a work order upon installation of my Internet service," and the work order expressly stated that Londono "acknowledge[d], read, and agreed to all of the terms of the work order." (Def. 56.1 Stmt. ¶ 8-9, Pl. 56.1 Stmt. ¶ 8-9). Londono's contention that she did not know that she was signing a contract and was not provided with the Terms of Service is unavailing. Courts in this Circuit have routinely enforced similar customer agreements. *See Druyan v. Jagger*, 508 F. Supp. 2d 228, 237-38 (S.D.N.Y. 2007), *Eslworldwide.com, Inc. v. Interland Inc.*, 2006 WL 1716881, at *1-2 (S.D.N.Y. June 21, 2006); *Ballas v. Virgin Media, Inc.*, 2007 WL 4532509, at *3 (N.Y. Sup. Ct. Dec. 6, 2007), *aff'd*, 60 A.D.3d 712 (2d Dep't 2009) ("A party is under an obligation to read a document before accepting its terms and cannot avoid the effect of the document by asserting that he or she did not read or understand the contents of the document.")

Moreover, it is undisputed that the Terms of Service were expressly incorporated by reference into the work order, and were accessible on the Cablevision website. (Def. 56.1 Stmt. ¶ 8-10, Pl. 56.1 Stmt. ¶ 8-10). To incorporate a document by reference, New York law requires that the document be referenced beyond all reasonable doubt. *See Chiacchia v. Nat'l Westminster Bank USA*, 124 A.D.2d 626, 628 (2d Dep't 1986) (citation omitted). When a contract clearly identifies a single document, it eliminates all reasonable doubt and thus qualifies as an effective incorporation. *See Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F. 2d 42, 47 n.8 (2d Cir.1993). "[A] party's failure to read a duly incorporated document will not excuse the obligation to be bound by its terms." *PaineWebber Inc. v. Bybyk*, 81 F. 3d 1193, 1201 (2d Cir. 1996) (citation omitted). Under these circumstances, the Court concludes that Londono entered into a valid contract with Cablevision.

### B.     Interpretation of the Contract

"Under New York law, the terms of a contract must be construed so as to give effect to the intent of the parties as indicated by the language of the contract." *Curry Rd. v. K Mart Corp.*, 893 F. 2d 509, 511 (2d Cir. 1990) (citing *Slatt v. Slatt*, 64 N.Y.2d 966, 967 (1985)). "The question of whether the language of a contract is clear or ambiguous is a question of law to be decided by the court." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F. 3d 153, 158 (2d Cir. 2000). "Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Id.* (internal quotation marks omitted). It is well settled that, in a case involving "a contract dispute, a motion for summary judgment will only be granted if the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning." *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F. 3d 63, 68 (2d Cir. 2008).

Plaintiffs contend that certain terms contained in the Terms of Service and the Acceptable Use Policy are vague and ambiguous. Plaintiffs support this assertion by citing to provisions that, although contained in the Terms of Service and the Acceptable Use Policy, are not critical to the issue before the Court; namely, whether plaintiffs assented to Cablevision's discretionary restriction of their bandwidth.

The terms contained in these documents that address this particular issue are neither vague nor ambiguous. The provision entitled, "Bandwidth, Data Storage and Other Limitations," states: "Cablevision reserves the right to protect the integrity of its network and resources by any means it deems appropriate. This includes, but is not limited to: port blocking, e-mail virus scanning, denying e-mail from certain domains, and putting limits on bandwidth and e-mail."

(Def. 56.1 Stmt. ¶ 13.)  The Terms of Service also state that: "Subscriber agrees that its activity will not improperly restrict, inhibit or degrade any other Subscriber's use of Optimum Online Service, nor represent (in the sole judgment of Cablevision) an unusually large burden on the network itself."  (Def. 56.1 Stmt. ¶ 12.)  The AUP states that "[e]xcessive use of bandwidth, that in Cablevision's sole opinion, goes above normal usage or goes beyond the limit allocated to the user" is a "network security violation."  (Def. 56.1 Stmt. ¶ 16.)  The AUP grants Cablevision the right "in its sole discretion," to take actions "without prior notification" to protect its network from such harms as "excessive use of bandwidth," including "temporary suspension of service, reduction of service resources, and termination of service," and further provides that "Cablevision is not liable for any such responsive actions."  (Def. 56.1 Stmt. ¶¶ 16-17.)

The plain meaning of these terms is that when a subscriber engages in conduct that uses more bandwidth than the amount that Cablevision, in its discretion, determines is reasonable, Cablevision may take action that it deems necessary to protect its network, such as suspension of internet service or a reduction of allotted bandwidth or speed.  These provisions do not conflict with other provisions in the documents.  Moreover, it was not necessary for Cablevision to expressly state that it would engage in what plaintiffs' label "throttling."  Plaintiffs define "throttling" as Cablevision "furtively [taking] measures to impede subscribers' Internet access."  (Pl. Opp. at 1.)  If anything, adding the term "throttling," would create ambiguity where it otherwise does not exist.  In any event, the contract indicates that Cablevision had the option to engage in precisely that—discretionary limitations of bandwidth and internet access of customer accounts that consumed, what it deemed, too much bandwidth.

11

### C. The Computer Fraud and Abuse Act

The CFAA is a criminal statute that provides for a private cause of action. *See* 18 U.S.C. § 1030(g)[4]. A private cause of action can stand only if a plaintiff establishes a violation of one of the factors set forth at section 1030(c)(4)(A)(i)(I-V). *Id*. Those factors include the "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). "Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages." 18 U.S.C. § 1030(g).

Plaintiffs allege that Cablevision's conduct violated §§ 1030(a)(5)(A)-(C), which provide penalties for whoever:

> (A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;
>
> (B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or
>
> (C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

18 U.S.C. § 1030(a)(5).

Plaintiffs' claims arising under the CFAA are defeated by the clear language of the Terms of Service and the Acceptable Use Policy. To assert a claim under any of the CFAA provisions listed above, a plaintiff must demonstrate that a defendant engaged in the complained of conduct "*without authorization*." *See* 18 U.S.C. § 1030(a)(5)(A)-(C) (emphasis added). As discussed earlier in this opinion, Plaintiffs assented to a contract which authorized Cablevision to "protect the integrity of its network" by "putting limits on bandwidth," (Def. 56.1 Stmt. ¶ 13) and to

---

[4] "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

protect its network from such harms as "excessive use of bandwidth" through the "temporary suspension of service, reduction of service resources, and termination of service." (Def. 56.1 Stmt. ¶¶ 16, 17.) Based on Plaintiffs' assent to these valid and enforceable provisions, Plaintiffs cannot now claim that Cablevision acted "without authorization" when it restricted their bandwidth. Accordingly, Plaintiffs' claims arising under the CFAA are dismissed with prejudice as amendment would be futile.

### D.     State Law Claims

Plaintiffs allege that Cablevision's conduct violates New York General Business Law § 349, and the New Jersey Consumer Fraud Act. Plaintiffs also allege New York common law claims of fraud and unjust enrichment.

#### 1.     New York General Business Law § 349

New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a). "To assert a viable claim under General Business Law § 349(a), a plaintiff must plead (1) that the challenged conduct was consumer-oriented, (2) that the conduct or statement was materially misleading, and (3) damages." *Shovak v. Long Island Commercial Bank*, 50 A.D.3d 1118, 1119-20 (2d Dep't 2008) (dismissing plaintiff's § 349(a) claim). Dismissal of such claims is appropriate when the business practice at issue was fully disclosed to the plaintiff. *See id.* at 1120 (dismissing plaintiff's § 349(a) claim as the business practice at issue was fully disclosed to the plaintiff).

Turning to the instant action, the business practice at issue—Cablevision's discretionary restriction of bandwidth or suspension of internet service—was fully disclosed in the Terms of Service and Acceptable Use Policy. Accordingly, Plaintiffs' § 349(a) claim is dismissed with

prejudice.  Moreover, to the extent that Plaintiffs allege that Cablevision mislead them by falsely representing that its service provides "High Speed Internet," "Faster Internet," and "blazing fast speed" and that "Optimum Online's lightning-fast Internet access takes the waiting out of the Web," these statements constitute puffery and are not actionable under § 349(a).  *See Fink v. Time Warner Cable*, 2011 WL 3962607, at *7-9 (S.D.N.Y. Sept. 7, 2011) (granting judgment on the pleadings to Time Warner on plaintiff's § 349(a) claim as Time Warner's description of its internet service as "always-on," "blazing fast," and as the "fastest, easiest way to get online" constituted mere puffery and was not actionable under § 349(a)).

2.   **New Jersey Consumer Fraud Act**

To establish a viable claim under the New Jersey Consumer Fraud Act ("CFA"), a plaintiff must allege "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss."  *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 514 (D.N.J. 2009).  Moreover, much like claims arising under New York General Business Law § 349(a), "where a CFA claim is based upon an allegedly incomplete or misleading disclosure, and where the parties' agreement contain[s] the very information that Plaintiffs allege was misrepresented, suppressed, or concealed, dismissal for failure to state a claim is appropriate."  *Id*. at 515 (internal quotation marks omitted) (dismissing plaintiff's CFA claim as the business practice at issue was disclosed to the plaintiff). In the instant action, Cablevision disclosed its policy of discretionary restriction of bandwidth and temporary suspension of internet service in the Terms of Service and Acceptable Use Policy. Accordingly, Plaintiffs' New Jersey CFA claim is dismissed with prejudice.  Moreover, Cablevision's statements regarding its internet service, such as its "blazing fast speed" are not actionable under the CFA as such statements constitute puffery.  *See New Jersey Citizen Action*

*v. Schering-Plough Corp.*, 367 N.J. Super. 8, 13 (App. Div. 2003) (concluding that a statement in advertising for Claritin that "you . . . can lead a normal nearly symptom free life again" was not an actionable statement of fact within the meaning of the CFA).

### 3. Common Law Fraud

Under New York law, "[t]o state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury." *Lerner v. Fleet Bank*, 459 F. 3d 273 (2d Cir. 2006) (citing *Kaufman v. Cohen*, 307 A.D.2d 113, 119 (1st Dep't 2003)). Statements will not form the basis of a fraud claim when they are mere "puffery" or are opinions as to future events. *See Nasik Breeding & Research Farm, Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 530 (S.D.N.Y. 2001) (citing *Cohen v. Koenig*, 25 F. 3d 1168, 1172 (2d Cir. 1994). Because the court has determined that the statements at issue are puffery, *see supra* Section II.D.1. and 2., Defendants' motion to dismiss Plaintiff's fraud claim is granted.

### 4. Unjust Enrichment

With respect to Plaintiffs' unjust enrichment claim, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Juice v. Evian Waters,* 87 F. 3d 604, 610 (2d Cir.1996) (*quoting Clark-Fitzpatrick, Inc. v. Long Island R.R.Co.*, 70 N.Y.2d 382, 388 (1987)). As set forth above, the Court has concluded that a valid, enforceable contract existed between the parties to this dispute. Accordingly, Plaintiffs' unjust enrichment claim is dismissed with prejudice.

15

## **CONCLUSION**

For the reasons set forth above, Plaintiffs' motion to strike is denied, and Defendants' motion for summary judgment is granted in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
       March 27, 2012

/s/
DORA L. IRIZARRY
United States District Judge
